2026 IL App (1st) 241705-U

No. 1-24-1705

Order filed March 23, 2026

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.   92 CR 26001 |
| | ) | 94 CR 13833 |
| | ) | |
| SHELLY MCGREE, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the dismissal of defendant's petition for relief from judgment where the unlawful use of a weapon by a felon statute is not facially unconstitutional and his as-applied constitutional challenge is forfeited.

¶ 2    Defendant Shelly McGree appeals from the dismissal of his petition for relief from judgment filed under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)), which alleged that his 1992 and 1994 convictions for unlawful use of a weapon by

a felon (UUWF) were void because they were based on a statute found unconstitutional in *People v. Aguilar*, 2013 IL 112116 and *People v. Burns*, 2015 IL 117387. On appeal, defendant contends that the UUWF statute is unconstitutional, both facially and as applied, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and the second amendment of the United States Constitution (U.S. Const., amend. II). We affirm.

¶ 3    On May 23, 1994, defendant was charged by information in case No. 94 CR 13833 with UUWF for possessing a firearm (count I) and ammunition (count II) after having been convicted of the felony offense of UUWF. On August 25, 1994, defendant pled guilty and was sentenced to two years' imprisonment.

¶ 4    On June 17, 2024, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code. In the petition, defendant claimed that he had three prior convictions for UUWF: one in case No. 92 CR 26001 and two in case No. 94 CR 13833. He argued that the three prior convictions for UUWF were void under *Aguilar* and *Burns* because they were based on a facially unconstitutional statute.

¶ 5    On July 8, 2024, the circuit court granted the State's oral motion to dismiss the petition. On March 6, 2025, our supreme court entered a supervisory order directing this court to accept defendant's notice of appeal as properly perfected. *People v. McGree*, No. 131559 (Ill. March 6, 2025) (supervisory order).

¶ 6    On appeal, defendant contends his UUWF convictions must be vacated because the relevant statute is unconstitutional, both facially and as-applied, under *Bruen* and the second amendment of the United States Constitution.

¶ 7 Under section 2-1401 of the Code, a defendant can petition to vacate a final judgment after 30 days from its entry. *People v. Abdullah*, 2019 IL 123492, ¶ 13. Generally, the petition must be filed within two years of the entry of the final judgment. 735 ILCS 5/2-1401(c) (West 2022). A void judgment, including one based on an unconstitutional statute, may be challenged at any time. *People v. Stoecker*, 2020 IL 124807, ¶ 28. We review a trial court's dismissal of a section 2-1401 petition *de novo*. *People v. Carter*, 2015 IL 117709, ¶ 13.

¶ 8 A party challenging the constitutionality of a statute "carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 23. A facial challenge alleges that the statute is unconstitutional under any set of facts; an as-applied challenge alleges only that the statute violates the constitution as applied to the particular set of facts and circumstances of the challenging party. *People v. Thompson*, 2015 IL 118151, ¶ 36. Whether a statute is constitutional is a question of law we review *de novo*. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9 (citing *People v. Davis*, 2014 IL 115595, ¶ 26).

¶ 9 The UUWF statute provides that it is a felony to "knowingly possess on or about [one's] person or on [one's] land or in [one's] own abode or fixed place of business any *** firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 1992).

¶ 10 The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

¶ 11 In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), holding that the Second Amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635. The court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons *** or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.

¶ 12 In 2010, the Court extended the right to keep and bear arms to the states under the Second Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The Court reiterated that its decision in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " *Id*. at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 13 In *Bruen*, the Court announced a new analytical framework for evaluating the constitutionality of firearm regulations. Under *Bruen*, if the Second Amendment's "plain text" covers an individual's conduct, the conduct is presumptively protected. *Bruen*, 597 U.S. at 24. To justify the regulation of that conduct, the government must then demonstrate that the regulation " 'is consistent with the Nation's historical tradition of firearm regulation.' " *Smith*, 2024 IL App (1st) 221455, ¶ 12 (quoting *Bruen*, 597 U.S. at 24). To do so, the government must point to historical precedent, focusing on what the founders understood the Second Amendment to mean. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 70 (citing *Bruen*, 597 U.S. at 27, 34-36).

¶ 14 Here, defendant claims that the conduct prohibited by the UUWF statute is covered by the plain text of the Second Amendment and therefore is presumptively protected. "Under *Bruen*, the first step asks only whether 'the Second Amendment's plain text covers an individual's *conduct*.' (Emphasis added.) This step does not contemplate the actor or the subject." *Id*. ¶ 89 (quoting

*Bruen*, 597 U.S. at 17). Thus, the defendant's status as a felon is irrelevant at this stage of the analysis as the defendant's possession of a firearm is "presumptively constitutional." (Internal quotation marks omitted.) *Id*. (citing *Bruen*, 597 U.S. at 17-19). The impact of a defendant's prior felony conviction on his Second Amendment right to possess a firearm is more properly evaluated under the second step's historical tradition analysis.

¶ 15 Under the second step of the *Bruen* analysis, *Brooks* found ample historical support for the legislature's ability to prohibit possession of firearms by twice-convicted felons. *Id*. ¶¶ 90-105. The historical analysis noted "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id*. ¶ 96. *Brooks* recognized a "historical tradition of legislatures exercising their discretion to impose status-based restrictions disarming entire categories of persons who, based on their past conduct, were presumed unwilling to obey the law" and that "the founders understood that felons were one such group." (Internal quotation marks omitted.) *Id*. ¶ 97. Thus, defendant's facial challenge to the UUWF statute fails.

¶ 16 Defendant next argues that the UUWF statue is unconstitutional as applied to him because he only had non-violent convictions prior to his UUWF charges, and there is no historical basis for disarming and criminally punishing non-violent felons. Relying on *Thompson*, the State responds that defendant's as-applied challenge is forfeited because he failed to raise the issue before the trial court and the record on appeal is insufficient for the claim to be adjudicated on the merits.

¶ 17 While facial challenges to a statute may be raised at any time, the "void *ab initio* doctrine does not apply to an as-applied constitutional challenge." (Emphasis omitted.) *Thompson*, 2015 IL 118151, ¶ 32. Because as-applied challenges depend on the particular facts of the individual, "it is

paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id*. ¶ 37. However, where the evidentiary record is sufficient, we may consider an as-applied constitutional challenge for the first time on appeal. See *Brooks*, 2023 IL App (1st) 200435, ¶¶ 59-62 (explaining that the evidentiary record below was sufficiently developed for review and the State failed to identify any relevant omitted facts that could have been produced below).

¶ 18 In this case, even if the record on appeal were sufficient to allow our consideration of defendant's as-applied constitutional challenge, he would not be entitled to relief on his theory that his felony convictions were for nonviolent offenses.

¶ 19 As this court has observed, the Supreme Court has not distinguished between bans on firearm possession by violent and non-violent felons. *Id.* ¶¶ 99-100. Nor has this court held that the prohibition on firearms possession for felons is unconstitutional as applied to nonviolent felons. See *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 156 ("whether defendant's qualifying convictions were 'nonviolent' is irrelevant, as the Supreme Court placed no qualifiers on the word 'felons' in either *Heller* or *McDonald*"); *People v. Gross*, 2024 IL App (2d) 230017-U, ¶ 27 ("neither *Heller* nor *Bruen* qualified the term 'felon' or otherwise limited it to violent felons"); see also *Medina v. Whitaker*, 913 F. 3d 152, 159 (D.C. Cir. 2019) (observing that "[f]elonies encompass a wide variety of non-violent offenses, and we see no reason to think that the [United States Supreme Court] meant 'dangerous individuals' when it used the word felon" in *Heller*).

¶ 20 Although felons were not broadly prohibited from possessing firearms until the twentieth century, "such laws evolved from preexisting prohibitions restricting access to firearms," including by certain groups of people. *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 28-29. In colonial

America, for example, legislatures " 'disarm[ed] individuals whose status indicated that they could not be trusted to obey the law.' " *Id.* ¶¶ 30-31 (quoting *Brooks*, 2023 IL App (1st) 200435, ¶ 94).

¶ 21    Thus, defendant's contention that his criminal history is nonviolent does not affect the constitutionality of the UUWF statute and it is constitutional as applied to him.

¶ 22    For the foregoing reasons, we affirm the circuit court's dismissal of defendant's petition for relief from judgment.

¶ 23    Affirmed.